# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NABIL AKROUT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **C.A. No. 2017-0473-JRS** |
| | : | |
| ROMAN JARKOY, VLADIMIR | : | |
| BOBROVSKY, BORIS KALK, and | : | |
| INTELLIGENT SECURITY | : | |
| SYSTEMS INTERNATIONAL, INC., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Date Submitted:  April 17, 2018
Date Decided:  July 10, 2018

David L. Finger, Esquire of Finger & Slanina, LLC, Wilmington, Delaware, Attorney for Plaintiff.

Kenneth J. Nachbar, Esquire and Alexandra M. Cumings, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, and Steven G. Mintz, Esquire and Kevin M. Brown, Esquire of Mintz & Gold LLP, New York, New York, Attorneys for Defendant Roman Jarkoi.

**SLIGHTS, Vice Chancellor**

A sidelined director and stockholder of a dissolved corporation seeks the Court's assistance to resurrect the corporation and cause the corporation and its directors to answer his claims of wrongdoing. In his Verified Complaint for Breach of Fiduciary Duties, Declaratory Relief and Appointment of a Receiver (the "Complaint"), Plaintiff, Nabil Akrout, seeks a declaration that the dissolution of Intelligent Security Systems International, Inc. ("ISSI") is void. He requests that the Court revive ISSI and appoint a receiver on its behalf. He also alleges that Defendants, Vladimir Bobrovsky, Boris Kalk and Roman Jarkoi[1] (together the "Individual Defendants"), breached their fiduciary duties of "candor/loyalty, and good faith and fair dealing" by failing to apprise Akrout of ISSI's dissolution and "affirmatively mislead[ing] him regarding ISSI's financial condition and legal standing."[2] These actions allegedly allowed the Individual Defendants to benefit from revenues generated by ISSI to the exclusion of Akrout and to deny Akrout accrued salary and benefits.[3]

---

[1] It appears from Jarkoi's filings that his name is misspelled in the case caption and throughout the Complaint.

[2] Compl. ¶¶ 14, 16. I note that the Complaint contains two different paragraphs numbered "11" and two different paragraphs numbered "12." Citations to the first iteration of each duplicate-numbered paragraph will be to "11A" or "12A" and citations to the second iteration will be to "11B" or "12B."

[3] Compl. ¶ 15.

Certain defendants, ISSI, Bobrovsky and Kalk, have not appeared in the litigation. Accordingly, Akrout seeks a default judgment against them pursuant to Court of Chancery Rule 55. Jarkoi has appeared and has filed a motion to dismiss the Complaint as to Count I (breach of fiduciary duty) under Court of Chancery Rule 12(b)(6) for failure to state a claim and under Court of Chancery Rule 23.1 for Akrout's lack of standing to pursue what Jarkoi characterizes as solely derivative claims.[4]

The Complaint is not a model of clarity. Nevertheless, I have done my best to discern the claims Plaintiff intended to plead and to draw all reasonable inferences in Plaintiff's favor. Even after giving Plaintiff all benefits of the highly deferential Rule 12(b)(6) standard of review, I am satisfied that Plaintiff has failed to plead viable claims. Accordingly, I grant Jarkoi's motion to dismiss, deny Plaintiff's motions for default judgment against Bobrovsky, Kalk and ISSI and dismiss the Complaint with prejudice.

## I. FACTUAL BACKGROUND

I have drawn the facts from the allegations in the Complaint and documents incorporated by reference or integral to the Complaint. I accept as true the

---

[4] As discussed below, the Court dismissed Counts II and III as to Jarkoi in a Bench Ruling on December 18, 2017.

Complaint's well-pled factual allegations and draw all reasonable inferences in Plaintiff's favor.[5]

## A. The Parties

Plaintiff, Akrout, was a director and stockholder of Defendant, ISSI, a Delaware corporation that operated in the digital security and surveillance video space.[6] Akrout and the Individual Defendants founded ISSI on March 3, 2004.[7] According to the Complaint, Akrout held 170 shares of ISSI's 655 outstanding shares at the time of the dissolution, and he continues to hold those shares today.[8] Like Akrout, the Individual Defendants were each directors and stockholders of ISSI.[9]

Akrout and the Individual Defendants were all parties to a stockholders agreement dated March 1, 2004.[10] It appears that Akrout was identified as a

---

[5] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006).

[6] Compl. ¶¶ 1, 5.

[7] Compl. ¶ 5.

[8] Compl. ¶ 6.

[9] Compl. ¶¶ 2–4.

[10] Compl. ¶ 6. The Complaint refers to both a "shareholders agreement" and a "stockholders agreement." *Compare* Compl. ¶ 6 *with* Compl. ¶ 11A. As best I can tell from the Complaint, the two agreements are one and the same. Thus, I will refer to the agreement as the "stockholders agreement."

"founder" in that agreement and that he was granted approximately 12.2% of ISSI's authorized shares in that capacity.[11]

Akrout served as President and CEO of ISSI pursuant to an employment contract until he was removed from those positions on January 29, 2008.[12] After his removal as President and CEO, Akrout alleges that he continued to serve as an ISSI director even though the other directors stopped communicating with him.[13]

**B. The Aftermath of Akrout's Removal from ISSI's Management**

According to Plaintiff, ISSI's board of directors ("the Board") did not hold regular meetings.[14] The last meeting of the Board of which Akrout had notice convened on May 16, 2007.[15] Consequently, Akrout has not been afforded an opportunity to participate in the management of ISSI since his removal as President and CEO in January 2008.[16]

---

[11] Compl. ¶¶ 6, 11A.

[12] Compl., Ex. A. Although he was removed as CEO at a January 29, 2008 stockholders meeting, Akrout did not receive notification of his removal until February 12, 2008. *Id.*

[13] Compl. ¶ 9; Compl., Ex. A.

[14] Compl. ¶ 9.

[15] Compl. ¶ 9.

[16] Compl. ¶ 9.

4

Akrout alleges that ISSI "still owes [him] approximately $2,000,000 in accrued salary (exclusive of bonuses)" under his employment contract.[17] After his removal from management, Akrout communicated with "other members [of] ISS[I] to inquire about when he would receive any payment of his back salary and any dividends, the most recent communication being in January, 2017."[18] In response to these inquiries, Akrout allegedly was told (by whom he does not say) that "ISS[I] had no money [to pay him] and to be patient."[19]

Following his removal from ISSI management, Akrout followed ISSI's operations by "read[ing] routinely ISS[I]'s website, including press releases . . . in the hopes of receiving his back pay plus stock dividends."[20] This practice of remote monitoring led Akrout to discover on February 21, 2017, that ISSI had filed a certificate of dissolution on June 26, 2014.[21] Akrout was surprised to learn of ISSI's dissolution because he had received no prior notice of either a meeting of the Board

---

[17] Compl. ¶ 8.

[18] Compl. ¶ 10.

[19] Compl. ¶ 10.

[20] Compl. ¶ 11A.

[21] Compl. ¶ 12A; Compl., Ex. C. Akrout alleges that he made this discovery when he received a copy of ISSI's certificate of dissolution from the Delaware Secretary of State on February 21, 2017. Compl., Ex. C at 1–2.

at which a recommendation to dissolve was to be discussed, or a meeting of stockholders where a vote to authorize dissolution was to be held.[22]

## C. Plaintiff's Claims

Count I comprises the following six paragraphs:

12[B].  Akrout incorporates by reference the allegations contained in numbered paragraphs 1-11[B] above.

13.  Prior to "dissolution," Defendants Jarko[i], Bobrovsky and Kalk owed fiduciary duties to Akrout as a stockholder.  Upon dissolution, Jarko[i], Bobrovsky and Kalk owed fiduciary duties to Akrout as a creditor.

14.  Jarko[i], Bobrovsky and Kalk knowingly and intentionally kept Akrout in the dark about the dissolution and affirmatively misled him about ISS[I]'s financial condition and legal standing.

15.  Their actions allowed them to benefit from revenues generated by ISS[I] at the expense of Akrout, denying him accrued salary and dividends.

16.  The actions of Jarko[i], Bobrovsky and Kalk, constitute breaches of their fiduciary duties of candor/loyalty, and good faith and fair dealing.

17.  Jarko[i], Bobrovsky and Kalk should be ordered to account for all money that came in and/or out of ISS[I] since Akrout was removed as President and CEO of ISS[I].  They should also be required to disgorge any money they took or otherwise obtained from ISS[I] in violation of Akrout's contract rights and stockholder dividend rights.

---

[22] Compl. ¶ 11B.

6

During oral argument, Plaintiff's counsel explained that:

> The crux of the complaint is that Mr. Akrout discovered just inadvertently that the company had been dissolved and what he really wants to do is get the company back what may have been taken from him improperly; that is, moneys that have gone in and out either through operation of the company as a going concern, notwithstanding it being dissolved, and money that should have been distributed, as one does in a dissolution if there was a proper dissolution—marshal the assets, pay off creditors, and distribute the—whatever is left over to the stockholders as dividends.[23]

Notwithstanding counsel's attempt at clarification, even after drawing all inferences in Plaintiff's favor, I can discern no well-pled claim in Count I that the Individual Defendants breached their fiduciary duty to Akrout by failing to make

---

[23] Tr. of Oral Arg. on Def. Roman Jarko[i]'s Mot. to Dismiss and Pl.'s Mot. for Entry of Default J. Against Vladimir Bobrovsky and Boris Kalk (Apr. 17, 2018) (the "April 17, 2018 Oral Argument") (Dkt. 42) at 20. Plaintiff's counsel's *post hoc* attempt to clarify the allegations in the Complaint in response to a motion to dismiss, while understandable given the paucity of the Complaint, cannot be received as a supplement or amendment to the pleading itself. *Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168 ("The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion to dismiss. When the trial court considers matters outside of the complaint, a motion to dismiss is usually converted into a motion for summary judgment and the parties are [then] permitted to expand the record."); *Gerber v. EPE Hldgs., LLC*, 2013 WL 209658, at *4 n.38 (Del. Ch. Jan. 18, 2013) (noting that an answering brief in response to a motion to dismiss is not the appropriate vehicle "for expanding claims"); *Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002) ("[Plaintiff] improperly attempts to expand the scope of his complaint in his brief opposing the motion to dismiss . . . At this stage of litigation, the Court is only permitted to consider the well-pleaded facts contained in the complaint and any documents incorporated by reference into that complaint. Briefs relating to a motion to dismiss [and, logically, oral argument regarding those briefs,] are not part of the record and any attempt contained within such documents to plead new facts or expand those contained in the complaint will not be considered."). In deciding Akrout's motion, the Court's focus must not stray from the four corners of the Complaint and any documents it incorporates by reference. *Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 169.

proper distributions to him following the dissolution of ISSI. Instead, the only allegedly improper distributions that are mentioned in Count I took the form of pre-dissolution "dividends" that allegedly were declared and paid following his removal as President and CEO in 2008.[24] Akrout also alleges that the Individual Defendants breached their fiduciary duties by failing to pay him "accrued salary" per his "signed contract" with ISSI.[25] As remedies, Akrout seeks damages, an accounting "for all money that came in and/or out of ISS[I] since Akrout was removed as President and CEO of ISS[I]" and disgorgement of "any money [the Individual Defendants] took or otherwise obtained from ISS[I]."[26] He does not, however, make any mention, much less make a formal prayer for relief, relating to any improper post-dissolution distributions.

Count II seeks a declaratory judgment that ISSI's dissolution is void.[27] Count III seeks the appointment of a receiver for ISSI.[28]

---

[24] Compl. ¶¶ 15, 17.

[25] Compl. ¶¶ 8, 15, 17.

[26] Compl. ¶ 17.

[27] Compl. ¶ 22.

[28] Compl. ¶ 25.

## D. Procedural History

Plaintiff filed the Complaint on June 26, 2017, three years to the day after ISSI filed its certificate of dissolution. As noted, only Jarkoi has entered an appearance as among the defendants. On December 18, 2017, the Court dismissed Counts II and III as to Jarkoi, with prejudice.[29] In doing so, the Court explained:

> You've got a director [Jarkoi] who is no longer a director. He is at best, a former director of at least a facially dissolved entity. I disagree that he maintains some status as trustee. Our statute isn't built that way. I don't see that he has any interest separate and apart from the company to defend here. . . . [ISSI] might have a basis to defend [] Count II [declaration of no valid dissolution] and III [appointment of a receiver] on the merits but I don't think Mr. Jarkoi needs to be the one articulating those arguments. . . . [Section] 3114 does not provide a basis to have the Court exercise personal jurisdiction over [Jarkoi] as a defendant in a claim where the plaintiff is seeking a declaratory judgment relating to the *bona fides* of a dissolution resolution by the board of a company or the appointment of a receiver.[30]

In January and February 2018, Plaintiff moved for default judgment against ISSI, Bobrovsky and Kalk.[31] In accordance with Court of Chancery Rule 55(b), on January 17, 2018, the Court directed that Akrout's counsel provide notice to ISSI and submit an affidavit of such notice in advance of the default judgment hearing

---

[29] Tr. of Oral Arg. Re Def[].'[s] Mot. to Dismiss Counts II and II[I] of the Compl. and the Court's Ruling (Dec. 18, 2017) ("December 18, 2017 Oral Argument") (Dkt. 28) at 23–28.

[30] *Id.* at 25–26.

[31] Dkt. 34.

scheduled for February 27, 2018.[32]  At the February 27, 2018 oral argument, the Court learned that the affidavit of notice had not been filed.[33]  Accordingly, the Court declined to take the motion for default judgment against ISSI under submission,[34] and again directed that Plaintiff's counsel submit an affidavit reflecting notice as to ISSI as per Rule 55(b), and also as to Bobrovsky and Kalk.  The Court requested that Plaintiff's counsel file the notice in advance of the April 17, 2018 hearing on Plaintiff's motion for default judgment against Bobrovsky and Kalk and Jarkoi's motion to dismiss Count I.[35]  Once again, the affidavit of notice for ISSI, Bobrovsky or Kalk was not filed as directed prior to the April 17, 2018 hearing.[36]  Nevertheless, the Court took all pending motions—Jarkoi's motion to dismiss Count I and Plaintiff's motions for default judgment against ISSI, Bobrovsky and Kalk—under submission.

---

[32] Dkt. 30.

[33] Tr. of Oral Arg. on Pl.'s Mot. for Default J. Against Def. Intelligent Sec. Sys. Int'l, Inc. (Feb. 27, 2018) ("February 27, 2018 Oral Argument") (Dkt. 41) at 14–15.

[34] Tr. of Feb. 27, 2018 Oral Arg. at 14–15.

[35] *Id.* at 15.

[36] Tr. of Apr. 17, 2018 Oral Arg. at 16.

## II. LEGAL ANALYSIS

I address the three pending motions in the following sequence: (A) Plaintiff's motion for default judgment against ISSI; (B) Jarkoi's motion to dismiss Count I; and (C) Plaintiff's motion for default judgment against Bobrovsky and Kalk.

### A. Plaintiff's Motion for Default Judgment Against ISSI

Plaintiff has moved for default judgment against ISSI. Although not specified in his motion papers,[37] I assume Plaintiff seeks default judgment against ISSI on Counts II and III of the Complaint as the entity does not appear to be a subject of Count I.[38] As explained below, Plaintiff's motion for default judgment against ISSI must be denied because the claims against ISSI were brought outside of the three-year period for post-dissolution winding up set forth under 8 *Del. C.* § 278.

Section 278 states, in relevant part:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their

---

[37] *See* Mot. for Entry of Default Declaratory J. Against Def. Intelligent Sec. Sys. Int'l, Inc. (Jan. 12, 2018) (Dkt. 29) ("ISSI Default J. Mot.").

[38] As noted, Count I alleges breach of fiduciary duty (presumably against the Individual Defendants) while Counts II and III seek a declaratory judgment that ISSI's dissolution is void and the appointment of a receiver, respectively. Compl. ¶¶ 12B–25. *See also* ISSI Default J. Mot. ¶¶ 4, 8 (addressing alleged infirmities in the dissolution process).

11

stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized.[39]

While Section 278 sets a three-year post-dissolution winding up period within which claims against the dissolved corporation may be prosecuted, it does not specify how the three-year period is to be calculated. In *In re Citadel Industries, Inc.*, this Court determined that the three-year period under Section 278 begins to run as of the date of the filing of the certificate of dissolution and that it expires three years thereafter.[40] Here, ISSI filed its certificate of dissolution with the Delaware Secretary of State on June 26, 2014, and the last day of the statutory three-year winding up period was June 25, 2017.[41] Plaintiff filed the Complaint at 6:36 PM on June 26, 2017, one day late.[42]

Although Section 278 grants the Court discretion to extend the statutory three-year winding up period,[43] the court explained in *Citadel* that Section 278

---

[39] 8 *Del. C.* § 278.

[40] 423 A.2d 500, 502 (Del. Ch. 1980) (finding that where the certificate of dissolution was filed with the Delaware Secretary of State on November 18, 1976, "November 17, 1979, [was] the date on which the statutory three-year winding up period provided under [Section] 278 had expired as to [the company]"). I note that the relevant provisions of Section 278 have remained unchanged since *Citadel* was decided in 1980. *See* 56 Del. Laws, c. 50, § 0 (1967); 66 Del. Laws, c. 136, § 36 (1987); 77 Del. Laws, c. 290, § 26 (2010).

[41] Compl. ¶ 12A; Compl., Ex. C at 2.

[42] Dkt. 1.

[43] 8 *Del. C.* § 278 ("All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such

merely [] permit[s] this Court, in its discretion, and *prior to the expiration of three years* from the date of dissolution, to continue corporate existence for such an additional period of time beyond three years as might be required in order to permit a corporation to complete the winding up of its affairs through its officers and directors. . . . [T]he statute, as amended, gives this Court no power to "continue" a corporation for winding up purposes on an application made after the statutory three-year period has expired and thus after the corporation has ceased to exist as a legal entity.[44]

Because Plaintiff filed the Complaint after the expiration of the statutory three-year winding up period provided for in Section 278, and did not seek an extension within that period, the Court is without authority to resurrect ISSI to answer the allegations in the Complaint.[45] Accordingly, Plaintiff's motion for

---

expiration or dissolution *or for such longer period as the Court of Chancery shall in its discretion direct . . .*") (emphasis added).

[44] *Citadel*, 423 A.2d at 507 (emphasis added).

[45] I note that June 25, 2017 was a Sunday. If the deadline at issue was one set by Court rule, or was a statute of limitations, then Court of Chancery Rule 6(a) would extend the deadline to the following Monday, June 26, 2017. *Fleming v. Jackson*, 888 A.2d 231 (Del. 2005) (TABLE) (holding that when the statute of limitations expires on a weekend, a filing on the following Monday would be timely). But the winding up period prescribed by Section 278 is not *per se* a filing deadline. It is, instead, a timeframe within which a corporation "shall nevertheless be continued" following dissolution "for the purpose of prosecuting and defending suits" and winding up affairs. 8 *Del. C.* § 278. That "continued" status cannot be extended by court rule. *See Nelson v. Frank E. Best Inc.*, 768 A.2d 473, 475 (Del. Ch. 2000) (holding that the twenty-day period set forth in 8 *Del. C.* § 262(d)(2) is not extended when the twentieth day falls on a Sunday). If Akrout had wanted to extend the winding up period, he was obliged to seek that extension while the corporation was still in its "continued" status. *Citadel*, 423 A.2d at 507.

default judgment against ISSI is denied[46] and the claims against ISSI (Counts II and III), which are indisputably untimely under Section 278, are dismissed.

## B. Jarkoi's Motion to Dismiss Count I

Under Court of Chancery Rule 12(b)(6), a complaint must be dismissed if the plaintiff would be unable to recover under "any reasonably conceivable set of circumstances susceptible of proof" based on the facts as pled in the complaint.[47] In considering a motion to dismiss, the Court must accept as true all well-pled allegations in the complaint and draw all reasonable inferences from those facts in Plaintiff's favor.[48] The Court need not accept, however, conclusory allegations that lack factual support nor "accept every strained interpretation of the allegations proposed by the plaintiff."[49]

### 1. The Direct Versus Derivative Inquiry

As an initial matter, I note that it is unclear on the face of the Complaint whether the claims Akrout sets forth in Count I are intended to be derivative or

---

[46] I note that even if Section 278 is not operative here, the motion for default judgment against ISSI must nevertheless be denied because Plaintiff's counsel has twice failed to provide proper notice to ISSI. *See* Tr. of Feb. 27, 2018 Oral Arg. at 13–15; Tr. of Apr. 17, 2018 Oral Arg. at 16.

[47] *Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168.

[48] *Id.*

[49] *Id.*

direct.[50]  The distinction is always consequential; it is particularly so here because Akrout did not make a demand upon the Board to bring the claim and has made no effort in his Complaint to plead that demand would have been futile.[51]

The court will deem a claim derivative "[w]here all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders."[52]  "The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct."[53]  Rather, "[i]n order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large."[54]  Plaintiff

---

[50] *See* Compl. ¶¶ 12B–17; Tr. of April 17, 2018 Oral Arg. at 18–19.

[51] Ct. Ch. R. 23.1.  *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) ("Pleadings in derivative suits are governed by Chancery Rule 23.1. . . .  Those pleadings must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by Chancery Rule 8(a).  Rule 23.1 is not satisfied by conclusory statements or mere notice pleading.") (citation omitted); *La. Mun. Police Empls.' Ret. Sys. v. Pyott*, 46 A.3d 313, 351 (Del. Ch. 2012) ("Rule 23.1 requires that a derivative plaintiff allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort.") (quotation marks omitted), *rev'd on other grounds*, *Pyott v. La. Mun. Police Empls.' Ret. Sys.*, 74 A.3d 612 (Del. 2013).

[52] *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008).

[53] *Id.*

[54] *Id.*

15

argues that his claims are direct because ISSI was "a closely-held corporation where three of the stockholders have enriched themselves to the detriment of the only other stockholder."[55]

It is likely that Akrout's claim regarding the Board's disclosure violations relating to the dissolution and his claim regarding the Individual Defendants' misappropriation of corporate assets are derivative. Having acknowledged that he made no effort to make a demand upon the Board to bring these claims, or to plead demand futility, the claims would be subject to dismissal under Court of Chancery Rule 23.1.[56] I need not decide the motion on that ground, however, because even after drawing all reasonable inferences in Plaintiff's favor, it is clear that Plaintiff's claims against the Individual Defendants, whether derivative or direct, fail as a matter of law.

---

[55] Answering Br. of Pl. Nabil Akrout in Opp'n to the Second Mot. of Def. Roman Jarko[i] to Dismiss the Verified Compl. 11.

[56] *See Khanna v. McMinn*, 2006 WL 1388744, at *14 (Del. Ch. May 9, 2006). *See also* Tr. of Apr. 17, 2018 Oral Arg. at 28–30 (The Court: "Where is the demand futility pleading?" Counsel: "[T]here may be practice but no rule that says you have to go through a formalistic approach, demand is excused because of X, Y, and Z, as long as the facts in the complaint allow that conclusion to be drawn. And the facts we are relying on is A that they kept him out of the management of the company and they utilized the company to their own benefit." The Court: "Do you say for that reason that demand is excused? . . . Where is that?" Counsel: "No, Your Honor. I don't use that formalistic term. What I'm saying is that if those facts permit an inference that they are disqualified, a disqualifying interest, then demand is excused.").

## 2. Laches

Regardless of whether Plaintiff's claims in Count I are derivative or direct, they are barred by laches.[57]  "Laches is an equitable defense born from the longstanding maxim equity aids the vigilant, not those who slumber on their rights."[58]  The doctrine of laches is "generally defined as an unreasonable delay by the plaintiff in bringing suit after the plaintiff learned of an infringement of his rights, thereby resulting in material prejudice to the defendant."[59]  Therefore, in order to defend on laches, Jarkoi must demonstrate that (a) Plaintiff had knowledge of the invasion of his rights, (b) Plaintiff unreasonably delayed in bringing suit to vindicate those rights, and (c) the delay resulted in injury or prejudice to Jarkoi.[60]

---

[57] The Court will undertake a full laches analysis here because it appears Akrout is seeking both legal and equitable remedies.  *See Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 979 (Del. Ch. 2016) (holding that where a plaintiff seeks only damages for an equitable claim, the court "will apply the statute of limitations by analogy" and will not undertake a more thorough laches analysis).

[58] *Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009).

[59] *Reid*, 970 A.2d at 182.

[60] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 210 (Del. 2005).  *See also Whittington v. Dragon Gp. L.L.C.*, 2010 WL 692584, at *5 (Del. Ch. Feb. 15, 2010), *aff'd* 998 A.2d 852 (Del. 2010) (TABLE).

17

### a. Plaintiff Had Knowledge of His Claims

Akrout concedes that he stopped receiving any information about ISSI after he was removed as president and CEO in early 2008.[61] The Complaint states that "since his removal from his offices, Akrout has not participated in the operation and management of ISS[I]" and "[a]fter being removed from management of ISS[I], Akrout began to read *routinely* ISS[I]'s website, including press releases, to follow its progress."[62] Thus, the information vacuum in which Akrout alleges the Individual Defendants placed him was created more than nine years prior to the filing of the Complaint. And Akrout was well aware of that fact. Indeed, given the nature of this aspect of his breach of fiduciary claim (that the Individual Defendants wrongfully kept him in the dark regarding ISSI), how could he not have been?

It is also clear from the Complaint that Akrout had knowledge of any misappropriation resulting in the deprivation of back pay and dividends soon after he was removed from management in 2008.[63] At paragraph 10 of the Complaint, he

---

[61] Compl. ¶ 14.

[62] Compl. ¶¶ 9, 11A (emphasis added).

[63] I cannot help but observe that Akrout's claim that the Individual Defendants breached their fiduciary duties by denying Akrout his contract rights and stockholder dividend rights," is puzzling. Compl. ¶ 15. The Complaint does not specify the basis for the contract and stockholder dividend rights at issue in this allegation. *See id.* ¶ 17. I assume, however, that the contracts in question governing the rights at issue are the only two contracts mentioned in the Complaint—Akrout's employment agreement and the stockholders agreement. Therefore, I struggle to discern how the Individual Defendants' alleged

18

alleges that he "communicate[d] with other members [of] ISS[I] to inquire about when he would receive any payment of his back salary and any dividends, the most recent communication being in January, 2017."[64] He then alleges that "[o]n those *occasions* that he received a response, it was to tell him that ISS[I] had no money and to be patient."[65] Clearly, then, Plaintiff knew for many years before bringing this action that he was owed back pay and dividends, that he had not been paid what was allegedly owed to him, and that the Individual Defendants had no present intention of making the payments because "ISS[I] had no money."[66] Thus, as to the

---

breaches of contracts with Akrout would amount to breaches of fiduciary duty, and Akrout has offered no explanation to clear up the confusion.

[64] Compl. ¶ 10.

[65] Compl. ¶ 10 (emphasis added).

[66] I note that the Complaint is devoid of any factual allegations regarding dividend payments, and the term "dividends" as referenced in Count I is without any context or explanation. At the April 17, 2018 Oral Argument, Akrout's counsel represented that the "reference to dividends" is "whatever is left over to the stockholders as dividends" after paying off creditors in a dissolution. Tr. of Apr. 17, 2018 Oral Arg. at 20. That understanding is simply not correct. Dividends are distributions of corporate profits to stockholders in proportion to their shares or interest in the corporation. *See* 11 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 5318 (Perm. Ed., Rev. Vol. 2015). *See also id.* ("Dividends have been described as the share or interest of individual shareholders in a fund representing corporate *profits*. A dividend also may be defined as a portion of a company's *earnings or profits* distributed pro rata to its shareholders . . . On the other hand, the following transactions have not been treated as dividends: court ordered divestitures; payments upon reacquisition and cancellation of shares; options to purchase shares; and refunds to purchasers.") (emphasis added) (internal citations omitted). As explained above, Akrout arguably has pled (albeit too late) a right to recover dividends declared after his removal from management but prior to dissolution. His attempt at oral argument to convert that claim into a claim for post-dissolution distributions cannot be countenanced. *Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at

19

two failures to make payments to which Akrout has identified in Count I—"accrued salary and dividends"—Akrout had knowledge (or, at least, inquiry notice) of those failures at or soon after his removal as an officer of ISSI in 2008.[67]

### b. Plaintiff Unreasonably Delayed in Bringing His Claims

When determining whether Akrout unreasonably delayed in bringing his claims, the Court must ask whether Akrout has exercised "that degree of diligence which the situation . . . in fairness and justice require[s]."[68] "The law in Delaware is

---

168–69; *Gerber,* 2013 WL 209658, at *4 n.38; *Orman v. Cullman*, 794 A.2d at 28 n.59. Even if a claim for post-dissolution distributions had been pled, it too would be untimely. According to the certificate of dissolution attached to the Complaint, distributions in connection with the dissolution were made prior to the time the certificate was filed and any claims regarding such dissolution accrued prior to June 26, 2017. *See* Compl., Ex. C at 1–2 ("[t]he corporation has no assets and has ceased transacting business."); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *18 (Del. Ch. June 29, 2005) ("The law in Delaware is crystal clear that a claim accrues as soon as the wrongful act occurs."). Even if Akrout did not know about the dissolution until February 21, 2017, "[t]he statute of limitations [began] to run even if [he was] unaware of the injury because ignorance of the facts constituting a cause of action does not act as an obstacle to the operation of the statute." *Shea v. Delcollo & Werb, P.A.*, 2009 WL 2476603, at *2 (Del. 2009) (TABLE) (internal quotations omitted). Akrout learned of ISSI's dissolution on February 21, 2017, which was within the analogous three-year statute of limitations, but he opted to file the Complaint on June 26, 2017, outside of the analogous three-year statute of limitations. Thus, even if a claim for post-dissolution distributions had been pled, the claim would fail as a matter of law because Akrout unreasonably delayed in bring it.

[67] Compl. ¶¶ 15, 17. "Inquiry notice exists when the plaintiff learns of 'facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery [of injury].'" *Whittington*, 2010 WL 692584, at *5 (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004)).

[68] *Scotton v. Wright*, 117 A. 131, 136 (Del. Ch. 1922), *aff'd sub nom. Wright v. Scotton*, 121 A. 69 (Del. 1923).

crystal clear that a claim accrues as soon as the wrongful act occurs."[69]  Under

10 *Del. C.* § 8106, a three-year period of limitations applies to claims sounding in

tort, contract, or breach of fiduciary duty for "damages caused by an injury

unaccompanied with force," and "that three-year period applies by analogy to

proceedings in equity."[70]  In Count I, Plaintiff alleges the Individual Defendants

breached their fiduciary duties.  Accordingly, the three-year limitations period under

10 *Del. C.* § 8106 must be given "great weight in determining whether [the claim] is

to be time-barred in equity."[71]

Akrout's claim that the Individual Defendants deprived him of information

relating to ISSI accrued as soon as he stopped receiving information.  The Complaint

suggests, but does not expressly state, that Akrout stopped receiving information

when he was removed from management in January 2008.[72]  Thus, Plaintiff's claim

for deprivation of information accrued more than nine years prior to the filing of the

---

[69] *Albert*, 2005 WL 1594085, at *18.

[70] *Id.* at *12.  *See also Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1064 (Del. Ch. 1989) ("An analogous statute of limitations period applicable at law [] is to be given great weight in determining whether a suit is to be time-barred in equity by laches and will be applied in the absence of unusual or mitigating circumstances.").

[71] *Atlantis Plastics Corp.*, 558 A.2d at 1064.

[72] Compl. ¶ 9 ("The last meeting of directors of which Akrout had notice of and an opportunity to participate in was May 16, 2007.  As such, since his removal from his offices, Akrout has not participated in the operation and management of ISS[I]."); *id.* ¶ 11A ("After being removed from management of ISS[I], Akrout began to read routinely ISS[I]'s website, including press releases, to follow its progress . . .").

Complaint in June 2017. The Complaint says nothing of why Akrout delayed in asserting his claim for deprivation of information and, consequently, provides no basis to consider whether a tolling doctrine might apply here.[73]

To understand whether Akrout unreasonably delayed in bringing his claims based on the misappropriation of back pay and dividends due to him, I must first analyze when those claims accrued. Akrout's claim to back pay accrued the moment the Individual Defendants first declined to pay him the salary he was owed. The allegations regarding when exactly Akrout stopped receiving his earned salary are, in a word, thin.[74] Nevertheless, the only reasonable inference to be drawn from the pled facts is that Akrout's claim for back pay could not have accrued any later than the year following his removal from his management positions at ISSI (January 2008). The claim is for "accrued salary," meaning that Akrout had already earned the salary at the time of his removal.[75] Whether the payment was due at the time of removal, a week later, a month later or a year later, the only reasonable inference is

---

[73] *See Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *14 (Del. Ch. Dec. 23, 2008) (holding that "the plaintiff has the burden of pleading facts leading to a reasonable inference that one of the tolling doctrines adopted by Delaware courts applies").

[74] Compl. ¶ 8 ("ISS[I] still owes Akrout approximately $2,000,000 in accrued salary (exclusive of bonuses) under that [employment] contract.").

[75] Compl. ¶ 8.

that the claim for back pay accrued well before the three-year mark prior to the filing of the Complaint.

As noted, Akrout's claim for dividends lacks any detail at all. He says nothing of past dividend practices or of any specific dividends that were paid to other stockholders but not to him. Nevertheless, the only reasonable inference is that Akrout was aware of his claim for dividends soon after his removal, made inquiries to the Individual Defendants about the dividends but, inexplicably, delayed in bringing his claim until the summer of 2017.[76]

Akrout's only attempt to justify his delay in bringing his claims for "accrued salary and dividends" is to allege summarily that he made inquiries to "other members [of] ISS[I] to inquire about when he would receive any payment of his back salary and any dividends" and was told "that ISS[I] had no money and to be patient."[77] This allegation falls well short of a basis to toll the statute of limitations or to avoid laches. First, the allegation is devoid of any details about when he reached out to ISSI[78] and with whom he spoke, both of which are details that would

---

[76] I note that any dividends to which Akrout might be entitled would have been declared and paid prior to ISSI's dissolution on June 26, 2014. Thus, the dividends would have been declared and paid more than three years prior to the filing of this action.

[77] Compl. ¶ 10.

[78] The only specific time mentioned, "January, 2017," is well beyond three years from the date the claim for "accrued salary and dividends" would have accrued. It cannot, therefore, serve as a basis to toll the statute of limitations or to avoid laches. *See Krahmer v.*

23

be at the heart of any tolling doctrine Akrout might seek to invoke. Without more, the vague assurances referenced in the Complaint are inadequate to toll "the running of the statute."[79] Second, on their face, the responses to Akrout's inquiries provide no assurance that payment will ever be made and, consequently, provide no basis for Akrout to have delayed in bringing his claims to court.[80]

### c. Jarkoi is Prejudiced by Plaintiff's Unreasonable Delay

"After the statute of limitations has run, defendants are entitled to repose and are exposed to prejudice as a matter of law by a suit by a late-filing plaintiff who had a fair opportunity to file within the limitations period."[81] Thus, as to all of Plaintiff's claims—deprivation of information, back pay, dividends (and post-dissolution distributions, if pled)—Plaintiff unreasonably delayed bringing his claims until the claims were outside of the analogous statute of limitations period. The consequence of Plaintiff's unreasonable delay is presumed prejudice to the Individual

---

*Christie's Inc.*, 911 A.2d 399, 408 (Del. Ch. 2006) (holding that tolling cannot be based on a communication that occurred after the statute of limitations had already expired).

[79] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 2012 WL 3201139, at *23 (Del. Ch. Aug. 7, 2012) (quoting *Burrows v. Masten Lumber & Supply Co.*, 1986 WL 13111, at *2 (Del. Super. Oct. 14, 1986)).

[80] *See In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007) (doctrines of equitable tolling and fraudulent concealment require reasonable reliance by the plaintiff).

[81] *In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at *4 (Del. Ch. Sept. 27, 2013). *See also Kraft*, 145 A.3d at 979 ("The Court may also presume prejudice if the claim is brought after the analogous limitations period has expired.").

Defendants.[82]   In this case, however, prejudice need not be presumed.  ISSI is dissolved, past its statutory winding up period, and the claims at issue relate to a string of events that began almost a decade ago.  Under these circumstances, the Individual Defendants would face significant and potentially insurmountable challenges in mounting their defense due to the difficulty of securing relevant corporate records (if any still exist) and securing appropriate witness testimony (even assuming that memories are still intact).[83]

*******

I acknowledge that the laches defense is frequently not "well-suited for treatment" on a motion to dismiss.[84]  But that is far from an absolute rule.  When it is "clear from the face of the complaint" that the claims are time-barred, particularly when an analogous statute of limitations is in play, it is appropriate to adjudicate the claims then and there on a motion to dismiss rather than kick the can down the road

---

[82] *Sirius XM S'holder Litig.*, 2013 WL 5411268, at *4; *Kraft*, 145 A.3d at 979.

[83] *Chaplake Hldgs., LTD. v. Chrysler Corp.*, 766 A.2d 1, 6 (Del. 2001) ("Statutes of limitation are designed to avoid the undue prejudice that could befall defendants, after the passage of an unreasonable amount of time, due to the loss of evidence, disappearance of witnesses, or fading memories."); *Cent. Mortg.*, 2012 WL 3201139, at *21 ("Statutes of limitations are enacted to require plaintiffs to use diligence in bringing suits so that defendants are not prejudiced by undue delay, in recognition of the fact that memories fade and information goes stale.  Stale claims pose an obvious threat to doing real justice, as any trial judge knows.  It is difficult enough to discern what happened when adverse parties are talking about what happened last year.") (internal citations and quotations omitted).

[84] *Reid*, 970 A.2d at 183.

to summary judgment.[85]  This is such a case.  Akrout's claims as set forth in Count I fail as a matter of law because it is clear on the face of the Complaint that they are barred by laches.

## C. Default Judgment Against Bobrovsky and Kalk

Count I rests on the same allegations and asserts the exact same claims against Jarkoi, Bobrovsky and Kalk; Akrout has made no effort to distinguish between the three Individual Defendants.  Thus, I see no principled basis to allow Akrout's time-barred claims to proceed against Bobrovsky and Kalk simply because they have not appeared (well after the dissolution of ISSI) to defend them.  And having dismissed Count II and III of the Complaint as to Jarkoi on the basis that a former director of ISSI should not be made to answer claims against the dissolved entity outside of the statutory winding up period, the same reasoning applies to Bobrovsky and Kalk.[86]  Therefore, the motion for default judgment against Bobrovsky and Kalk is denied, and Counts I through III against Bobrovsky and Kalk are dismissed.

---

[85] *Bean v. Fursa Cap. P'rs, LP*, 2013 WL 755792, at *6 (Del. Ch. Feb. 28, 2013).  *See also de Adler v. Upper N.Y. Inv. Co. LLC*, 2013 WL 5874645, at *12 n.145 (Del. Ch. Oct. 31, 2013) (collecting cases where this court has dismissed claims as untimely based on laches at the motion to dismiss stage).

[86] *See* Tr. of Dec. 18, 2017 Oral Argument at 25–26.  *See Clinton v. Enterprise Rent-A-Car Co.*, 977 A.2d 892, 897 (Del. 2009) (affirming trial court's denial of a motion for default judgment that was based, in part, upon a determination that identical claims against an appearing co-defendant were barred by the statute of limitations).

## III.    CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED and the motions for default judgment against ISSI, Bobrovsky and Kalk are DENIED.  The Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**