**In re CITADEL INDUSTRIES, INC.**

Court of Chancery of Delaware,
New Castle County.

Submitted Sept. 8, 1980.

Decided Nov. 21, 1980.

Richard R. Wier, Jr., and Vernon R. Proctor, of Prickett, Jones, Elliott & Kristol, Wilmington, for petitioner General Electric Co.

Arthur G. Connolly, Jr., and Stanley C. Macel, III, of Connolly, Bove & Lodge, Wilmington, for Citadel Industries, Inc.

BROWN, Vice Chancellor.

As a result of an *ex parte* application made pursuant to 8 *Del.C.* § 278, an order was entered by this Court on December 21, 1979 purporting to continue and extend the corporate existence of Citadel Industries, Inc. so as to permit the corporation to be joined as a party defendant in complex tort litigation already pending in Texas. Thereafter, a motion was promptly filed on behalf of Citadel Industries, Inc. to vacate that order. This is a decision on that motion. The decision involves an interpretation of the meaning of 8 *Del.C.* § 278 in light of certain amendments made to the statute in 1967.

The undisputed background facts are as follows. Citadel Industries, Inc. (hereafter "Citadel") is the corporate successor to American Locomotive Company. It was formerly a New York corporation which, through the merger process, became a Delaware corporation in 1966. Prior to that time it had sold its physical plant, equipment, name, goodwill and complete business of manufacturing locomotives. From 1964 onward, it was a holding company and was not engaged in the manufacture or sale of locomotives.

In 1973 Citadel's shareholders adopted a plan of complete liquidation and dissolution which was to be completed by November 30, 1976. The final liquidating distribution was declared on November 5, 1976, and on November 18, 1976 a certificate of dissolution was filed with the Delaware Secretary of State. At that time, according to the report of its independent auditors, Citadel had no assets and no liabilities.

On December 27, 1977 a grain elevator exploded in Galveston, Texas, killing 12 persons and injuring many others. The accident is said to have spawned some 36 lawsuits in various Texas courts. On September 19, 1979 suit was filed against General Electric Company (hereafter "General Electric") alleging that General Electric had manufactured certain locomotives used at the grain elevator, sparks from which allegedly ignited grain dust causing the explosion. General Electric first became aware of its involvement on September 28, 1979 when process was served upon its registered agent in Texas. It promptly proceeded to investigate the situation through its counsel. On October 15, 1979 it learned that the locomotives in question were supposedly "ALCO–GE" locomotives. Through further investigation General Electric was able to learn the serial numbers of the two locomotives by October 29, 1979. Through a subsequent search of its records General Electric determined that it had not manufactured either of the locomotives, but rather that they had both been manufactured by American Locomotive Company, one in 1943 and the other in 1952. This knowledge was ascertained by November 14, 1979.

On November 19, 1979, General Electric retained New York counsel to track down the contemporary corporate identity of American Locomotive Company. As a result, on December 5, 1979 General Electric was advised that Citadel was the last corporate successor of that corporation. General Electric then retained Delaware counsel to investigate the corporate status of Citadel. This revealed that Citadel had filed its voluntary certificate of dissolution on November 18, 1976. This brings us to the legal issue involved.

The Delaware General Corporation Law provides that upon a dissolution a corporation nevertheless exists for a period of three years for the purpose of winding up its corporate and business affairs. During this three–year period it may not carry on any business for which it previously existed, but it may do that which is necessary to bring its former business affairs to a conclusion. This includes bringing suit as well as defending suits brought by others. The statute which makes this provision is 8 *Del.C.* § 278.

Prior to 1967, § 278 read as follows:

"All corporations, whether they expire by their own limitation or are otherwise

dissolved, shall nevertheless be continued, for the term of three years from such expiration or dissolution, bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which the corporation shall have been established. With respect to any action, suit or proceeding begun or commenced by or against the corporation prior to the expiration or dissolution and with respect to any action, suit or proceeding begun or commenced by or against the corporation within three years after the date of the expiration or dissolution, the corporation shall, only for the purpose of such actions, suits or proceedings so begun or commenced, be continued bodies corporate beyond the three–year period and until any judgments, order, or decrees therein shall be fully executed."

In 1967, § 278 was amended so that it now reads as follows:

"All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution *or for such longer period as the Court of Chancery shall in its discretion direct*, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities, and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit, or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the corporation shall, for the purpose of such actions, suits or proceedings, be continued bodies corporate beyond the 3 year period and until any judgments, orders,

or decrees therein shall be fully executed, *without the necessity for any special direction to that effect by the Court of Chancery.*" (Emphasis added.)

Concerning this 1967 revision of the statute, the observation has been made that "[t]he only changes of substance in § 278 are the authorization for the Court of Chancery to maintain the corporate entity for a period of more than three years after dissolution, and the addition of the phrase 'civil, criminal, or administrative,' defining the type of suits which may be maintained during the period after dissolution." *Folk, The Delaware General Corporation Law* (1972 Ed.) at page 433. It is the above–emphasized language of the revised statute which relates to the first of the two so–called changes in substance referred to by Professor Folk.

Accordingly, § 278 existed in this amended form, with this so–called change in substance, when, on December 5, 1979, General Electric first learned that Citadel was the corporate successor to the actual manufacturer of the locomotives, and thus was a party which General Electric desired to bring in as co–defendant in the Texas suit against it. This, of course, was some three weeks after November 17, 1979, the date on which the statutory three–year winding up period provided under § 278 had expired as to Citadel. Accordingly, in reliance on 1967 amendatory language which gives this Court discretion to continue the § 278 winding up period for longer than three years, General Electric filed this action in which it asked the Court to do just that. Since Citadel no longer legally existed as a corporate entity on December 20, 1979, the date on which General Electric's petition was filed, the application was presented to the Court *ex parte*. It was thus granted without objection or argument based upon the representations made on behalf of General Electric and its interpretation of the statute.

A position having now been taken, and argument presented, on behalf of Citadel, I am convinced that the motion to vacate the

prior order of December 21, 1979, must be granted.

At the outset I dispose of one portion of the argument. General Electric points to the language of the statute which leaves the matter to the discretion of this Court. It then relies on the various factual matters set forth herein relating to its involvement with the Texas litigation to demonstrate, in its view, that "continuing" Citadel's existence is a proper exercise of discretion under the circumstances presented. It argues that it acted promptly once it learned on September 28 that it had been sued, and that it proceeded as diligently as it could in investigating the situation and in eventually ascertaining that it was Citadel to whom it needed to look for responsibility for the locomotives, or at least for possible contribution and indemnification for any liability found against General Electric. It also points out that it was able to obtain the *ex parte* relief here and thus join Citadel as a party in Texas approximately one week prior to the time that the Texas statute of limitations would have run out, a factor which would now permit Citadel's responsibility, if any, to be determined on the merits of the Texas actions as contrasted with the removal of Citadel from the litigation as a party if the present motion to vacate is granted. Citadel, on the other hand, attempts to argue various other factual matters in an effort to show that such an exercise of discretion by the Court was unwarranted.

For the reasons set forth hereafter, I find that under the circumstances the Court is legally barred by the intent and purpose of § 278 from "continuing" Citadel's corporate existence once the statutory three–year period had already expired, and for this reason there is no need to evaluate whether or not the granting of General Electric's application would constitute a proper exercise of discretion. I turn then to the legal analysis which I feel controls the decision herein.

■ At common law, the dissolution of a corporation abruptly ended its existence, thus abating all pending actions by and against it and terminating its capacity thereafter to sue or be sued. Thus, statutory authority is necessary to prolong the life of a corporation past its date of dissolution. *Oklahoma Gas Co. v. Oklahoma*, 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634 (1927); *Johnson v. Helicopter & Airplane Services Corp.*, 404 F.Supp. 726 (D.Md.1975); 16A *Fletcher*,, Cyclopedia Corporations (Perm.Ed.) § 8113. In Delaware, § 278 is the statute which provides this authority.

As it existed prior to 1967, § 278 extended corporate existence for an additional period of three years past the date of dissolution for the limited winding up purposes previously mentioned. Again, after the expiration of that period, the corporation ceased to exist insofar as its ability to sue or be sued in a new action was concerned. It also ceased to exist for winding up purposes except with respect to any action, suit or proceeding begun or commenced by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution. Thus, except with regard to pending proceedings or litigation, three years from the date of dissolution established the outside limit after which the corporation could no longer act or be sued in a corporate capacity.

The 1967 amendments have now provided the wherewithal for relief even from this extended date for the ultimate termination of corporate existence. While the automatic and self–executing three–year period of continued corporate existence has been retained, it is now provided that a dissolved corporation may, in addition, be "continued ... for such longer period [beyond the three years] as the Court of Chancery in its discretion may direct." The amendments also make it clear that as to any suit or proceeding commenced prior to the date of dissolution, or within the statutory three–year period thereafter, the corporation will be continued indefinitely as a body corporate until the conclusion of such proceedings or litigation "without the necessity for any special direction to that effect by the Court of Chancery."

I do not find this latter language to add anything new to the second sentence of

§ 278 as it previously existed. Prior to the 1967 amendments, the body corporate continued in existence even past the three—year period for the limited purpose of concluding such pending litigation, just as it does now. Prior to the amendments, it was not necessary to apply to this Court to have such limited corporate continuation assured. In this respect, the statute was self—executing just as it is now. By now expressly providing that it is unnecessary to appeal to the discretion of this Court in order to bring about the continuation of the corporate entity for this limited purpose, all the amendatory language to § 278 seems to do is make it explicit that the statute is still self—executing in this respect, and that it is thus unaffected by the addition of the aforesaid language to the first sentence of § 278.

Thus, as I analyze it, and relying strictly on the first sentence of § 278, the 1967 amendments now permit this Court to continue a dissolved corporation as a body corporate for such longer period beyond three years from the date of dissolution as in the discretion of the Court may appear necessary for any or all of the purposes set forth in the first sentence, namely (1) for the purpose of prosecuting and defending suits by or against it, (2) for the purpose of enabling the dissolved corporation to gradually settle and close its business, (3) so as to permit it to dispose of and convey property still possessed by it, (4) so as to enable it to discharge its liabilities, and (5) for the purpose of distributing any remaining assets to the stockholders; but not for the purpose of continuing the business for which it was organized.

The key to the problem, of course, is the statutory language which permits the corporate existence to "be continued" from the date of dissolution. Prior to the amendments the life of a corporation (other than for the purpose of concluding litigation timely filed) was continued for three years, and no more. With the amendments, that life can now be "continued" for a longer period than three years if the Court finds justification therefor. But I am of the opinion that the emphasis is on "continuing" that which is already in existence be-

fore the corporate entity, as a legal fiction, departs the legal realm and becomes only a recorded memory. Even if "continued" at the discretion of the Court, when the additional period expires, the dissolved corporation is no more. Once the clock has ticked away its final hours, whether the duration is established by statute or by judicial discretion, it is 8 *Del.C.* § 279 that comes into play.

It is § 279 that provides that whenever a corporation shall be dissolved in any manner whatever, this Court, "on application of any creditor or stockholder of the corporation, or on application of any one, who, in the Court's discretion, shows good cause therefor, at any time" may appoint a trustee or receiver "of and for the corporation, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with the power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, . . . and to do all other acts which might be done by the corporation, *if in being*, for the final settlement of the unfinished business of the corporation." This statute is necessary because once the three—year period under § 278 has expired (or now once an additional period which may be granted under § 278 has expired) the corporate officers have no power to continue their winding up duties. *Harned v. Beacon Hill Real Estate Co.*, Del. Ch., 80 A. 805 (1911), *aff'd,* Del.Supr., 84 A. 229 (1912). They have no power to act because the corporation no longer has legal existence.

This seeming digression is motivated by the desire to make a point. And it is this. The statutory scheme seems to contemplate two situations, one where the dissolved corporation has continuing legal existence and is capable of winding up its affairs through its own officers and directors, and the other where the dissolved corporation can no longer wind up its unfinished business because it has no legal existence, or where it is unable or unwilling to do so through its own officers and directors. § 278 applies to

the first situation; § 279 to the second. Compare, *Harned v. Beacon Hill Real Estate Co., supra.* This leads to a second point.

§ 279 expressly permits action to be taken by a creditor, by a stockholder, or by anyone else showing good cause. § 278, on the other hand, is silent as to who may seek to invoke the Court's discretion to "continue" the corporate existence. This latter circumstance is obviously attributable to the fact that prior to the 1967 amendments § 278 was self–executing and thus did not contemplate an application by anyone. The amendments vesting a longer period of corporate existence to the discretion of this Court neglected to specify who might or might not make such an application.

■ Against this background I note that I have been referred to no expression of a legislative intention to bring about a change in the existing statutory scheme (i. e., the interrelated but independent purposes of § 278 and § 279) by means of the addition of the 1967 amendatory language to § 278. Nor does the addition of that language tend necessarily to make the statute ambiguous when measured against its scope and purpose as it existed prior to the amendments. Moreover, even if it could be said that the statute was rendered ambiguous by virtue of the amendments, thus permitting an exercise in the application of the accepted principles of statutory construction, it is a basic rule of statutory construction that an amendment to an existing statute "is to be interpreted in accordance with an already–established statutory scheme unless there is a clearly expressed intention to alter the scheme." *Graffagino v. AMO-CO Chemical Co.,* Del.Supr., 389 A.2d 1302, 1303 (1978). An amendment of existing law by implication is not favored. *Wilmington Housing Auth. v. Greater St. John Bapt. Ch.,* Del.Supr., 291 A.2d 282 (1972).

I think this important because prior to the amendments it was the statutory scheme that once the three–year period had expired after a voluntary dissolution a corporation could not thereafter be revived so as to again act through its officers and directors. At least I have been cited no Delaware precedent wherein such action was permitted. At that point, any remaining unfinished business of the corporation could be completed only pursuant to § 279, and thus through a receiver or trustee appointed by the Court to act on behalf of the corporation and empowered to do all necessary acts which might have otherwise been done by the corporation itself "if in being."

Yet if General Electric's argument is to be upheld, it becomes evident that the amendment to the first sentence of § 278 will have authorized this Court to permit still another means of concluding unfinished business (other than pending litigation) even though the three–year winding up period has lapsed. General Electric argues that by definition the term "continue" can mean to resume an activity after an interruption as well as to go on in an uninterrupted fashion. And this is true. Thus it says that the amendment means that in addition to now being empowered to continue the corporate entity prior to the expiration of three years, this Court can also "continue" or resurrect a dissolved corporation even after the expiration of the statutory winding up period where in all fairness the circumstances warrant it. Since the tort here for which Citadel is sought to be held responsible occurred during the three–year period, since suit upon it was not yet barred by the Texas statute of limitations, and since the application to continue the corporate life was made scarcely more than a month after the three–year period had expired, General Electric suggests that the facts of this case illustrate the justification for concluding that the legislative policy behind the 1967 amendments to § 278 was designed to give this Court the power to grant the relief requested by General Electric so as to prevent an injustice to those who, without fault on their part, would have been deprived of an opportunity to seek redress for their injuries under the statute as it previously existed.

But as I see it, this argument begs the question. The question is, did the General Assembly, by amending the statute so as to

give this Court the power to further extend the duration of something already legislatively provided, intend also to give the Court the power to create still another method whereby the unfinished business of a dissolved corporation could be concluded—something which the statutory scheme theretofore did not permit? I think not. And to argue under one given set of facts that it might be reasonable and proper for the Court to take such action does not provide the answer as to whether it was the intention of the General Assembly that the Court have the power to do so.

Quite simply, if General Electric's argument is right, a creditor would now have an alternate means of proceeding once a corporation has been dissolved and the three-year winding up period has expired. Whereas formerly he could have proceeded only under § 279 to seek a receiver or trustee to act in the stead of the non-existent corporation, he would now have the choice of proceeding under § 278 to ask the Court to "continue" the corporation, thus requiring it to act for itself through its former officers and directors. In effect, he could ask the Court to call the players back from the dressing room, get them back into uniform, and require them to play a little longer even though the regulation game was over and the crowd had gone home. This would be a choice that had not previously existed, and thus it would represent at the same time both a change in the former statutory scheme as well as the creation of a right in a creditor and a power in the Court that did not exist before. And all this would have come about simply because the words "or for such longer period as the Court of Chancery shall in its discretion direct" were added to the first sentence of a statute whose sole previous purpose had been to provide a reasonable period after dissolution for the orderly winding up of corporate affairs, including the bringing of suits by and against it. The language itself does not mandate such an interpretation, and, as noted before, a change by implication of an already-established statutory scheme is not favored.

Nor do I feel that it would be wise to vest this Court with such power. Once a corporation is dissolved, the following three-year period run, all known debts paid, all remaining assets distributed to shareholders, books and records destroyed, and officers and directors gone on to other endeavors, how can any court be expected to get everyone reconvened and reorganized so as to "continue" the corporation as an entity for further winding up purposes? No doubt this is one reason for the existence of § 279 in the first place. And if the corporation is so "continued" after the passage of a period of years so as to enable others to sue it, what happens if a large money judgment is obtained against it? Who pays? How are former liability insurance contracts affected? How can a vast number of former shareholders be compelled to return any final distribution of assets, etc.? In each such case these factors, along with a myriad of others, would have to be considered by this Court if it were to properly exercise its discretion to continue the entity. In the case of a large, publicly-held corporation, the task would be enormous and the potential problems and considerations would be boundless.

■ General Electric points out that § 279 is of no assistance to it in the present circumstances. And this is undoubtedly true since General Electric wishes to make a claim against a voluntarily dissolved corporate entity which has previously disposed of all of its assets. The language of 8 *Del.C.* § 279 implies that its primary purpose is to safeguard the collection and administration of still existing property interests of a dissolved corporation. It functions primarily for the benefit of shareholders and creditors where assets remain undisposed of after dissolution. *Addy v. Short*, Del.Supr., 89 A.2d 136 (1952); *Lockwood v. OFB Corp.*, Del.Ch., 305 A.2d 636 (1973); *Slaughter v. Moore*, Del.Ch., 82 A.2d 963 (1912). Where there are no undistributed assets against which to effect a recovery, § 279 provides little solace to one possessing an after-discovered claim against a dissolved corporation.

But at the same time, all things must come to an end at some point, a policy evidenced in all jurisdictions by statutes of limitations. And in this regard § 278 has been compared to a statute of limitations. In *Smith–Johnson Steamship Corporation v. United States*, 231 F.Supp. 184, 186 (D.Del. 1964) the Delaware United States District Court analyzed the statute as follows:

"While § 278 represents a legislative policy declaring that all suits by or against dissolved corporations must be commenced within three years after dissolution, it is not, in itself, a statute of limitations. This clearly appears from the ensuing § 279 authorizing the Court of Chancery at any time, either before or after the corporation's affairs have been wound up, to appoint a receiver to prosecute or defend suits by or on behalf of the corporation.

"Nevertheless, while not a statute of limitations, it is a clear expression of a legislative policy normally prohibiting the commencement of actions by or against dissolved corporations more than three years after their dissolution and, as such, by way of analogy justifies the application of decisions interpreting statutes of limitations."

■ Balancing all the factors considered herein, I am compelled to reach the conclusion that the clear and obvious intent of the 1967 amendments to § 278 was merely to permit this Court, in its discretion, and prior to the expiration of three years from the date of dissolution, to continue corporate existence for such an additional period of time beyond three years as might be required in order to permit a corporation to complete the winding up of its affairs through its officers and directors. I am further forced to conclude that the statute, as amended, gives this Court no power to "continue" a corporation for winding up purposes on an application made after the statutory three–year period has expired and thus after the corporation has ceased to exist as a legal entity.

■ Under the facts of this case, Citadel went through a voluntary plan of dissolution and liquidation. It filed its certificate of dissolution on November 18, 1976. As of that date it had distributed all its assets and discharged or covered all known liabilities. The three–year statutory winding up period expired on November 17, 1979. After that date, Citadel no longer existed as a body corporate. It no longer had legal existence as a corporation. General Electric filed its application to continue Citadel as a body corporate on December 20, 1979, but at that point there was no longer a legal entity which could be continued through its officers, directors and shareholders. At that point, the Court was only empowered, in its discretion, to appoint a receiver or trustee under § 279 to act on behalf of the corporation as though it were still "in being."

It follows that this Court was without the power to grant General Electric's application to continue the corporate existence of Citadel under 8 *Del.C.* § 278, and that as a consequence the order of this Court of December 21, 1979 purporting to do so must be vacated. An appropriate form of order to this effect may be submitted.