COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 20, 2024

Thad J. Bracegirdle, Esquire
Bayard, P.A.
600 N. King Street, Suite 400
Wilmington, DE 19801

Neil R. Lapinski, Esquire
Gordon, Fournaris & Mammarella, P.A.
1925 Loverington Avenue
Wilmington, Delaware 19806

RE: ***Paul Rivera & Kalibrr, Inc. v. Angkor Capital Ltd., et al.*,**
Civil Action No. 2022-0671-MTZ

Dear Counsel:

The parties in this case surprised me after entry of final judgment with news that a plaintiff had been void for nonpayment of franchise taxes since before the litigation was filed. That news inspired a lot of questions. This letter begins with a with a gating inquiry: can a corporation that is void for nonpayment of franchise taxes participate in litigation? The answer, I think, is no. Plaintiff Kalibrr, Inc. is void under 8 *Del. C.* § 510. All powers granted to it under the Delaware General Corporation Law (the "DGCL") are inoperative. These include the powers to sue, be sued, to dissolve, and to wind up.

That answer begets another question, which the Delaware Supreme Court asked me to answer: what, if anything, can be done about the final judgment in this matter? I conclude that in the absence of a motion, my powers are limited.

While I entered that judgment unknowingly after Kalibrr was declared void, I cannot set it aside *sua sponte*.

## I.       BACKGROUND

In August 2022, Plaintiffs Paul Rivera and Kalibrr filed this action against Defendants Keenan Kwok, his investment vehicle Angkor Capital Limited ("Angkor"), Getlinks, Inc., and Ray Macrohon.[1]   Rivera and Kalibrr sought rescission of a stock purchase agreement entered into by and between Rivera, Kalibrr and Angkor (the "SPA") by which Angkor purchased 98.5% of Kalibrr's stock.[2]   Predicated upon rescission of Angkor's purchase, Plaintiffs sought a declaration under 8 *Del C.* § 225 that Angkor's July 29, 2022 written consent removing a director from Kalibrr's board, and replacing him with Macrohon, was invalid.[3]   In the alternative, Plaintiffs sought monetary damages for Angkor's breach of the SPA.[4]   Defendants counterclaimed: Kwok asserted a books and records claim under 8 *Del. C.* § 220(d), and Angkor asserted claims for various

---

[1] Docket item ("D.I.") 1 [hereinafter "Compl."].

[2] Compl. ¶ 11.

[3] *Id.* ¶¶ 35–41.

[4] *Id.* ¶ 45.

breaches of the SPA and its implied covenant.[5]  As is customary in Section 225

actions, a status quo order was entered to limit Kalibrr's decisionmakers to actions

in the ordinary course of Kalibrr's business.[6]

The matter went to trial, and on December 8, 2023, I issued my post-trial

decision concluding Angkor had breached the SPA, and awarded damages instead

of rescission.[7]  I therefore found in Defendants' favor on the Section 225 claim;

because the SPA was not rescinded, there was no basis to invalidate Angkor's

written consent.  I ordered Kalibrr to permit Kwok to inspect certain Kalibrr

documents under Section 220.[8]  On January 22, 2024, I entered the final order and

judgment (the "Final Judgment").[9]

On February 13, Rivera, but not Kalibrr, filed a notice of appeal on the

request for rescission and Section 225 claim.[10]  Rivera also filed a motion to stay

---

[5] D.I. 28 at Countercl. ¶¶ 20–35.

[6] D.I. 29.

[7] D.I. 79; D.I. 82 ¶¶ 1–2.

[8] D.I. 82 ¶ 5.

[9] D.I. 82.  Plaintiffs also brought a claim for tortious interference with the SPA against Kwok and Getlinks.  Compl. ¶¶ 46–49.  Judgment was entered in favor of Kwok and Getlinks after trial.  D.I. 82 ¶ 4.  Getlinks is not party to the appeal.  D.I. 83.

[10] D.I. 83.  That appeal is pending under the caption *Paul Rivera v. Angkor Capital Limited, et. al*, No. 58, 2024 (Del.).

entry of judgment and maintain the status quo pending appeal.[11]  Those motions have been fully briefed.  Defendants' opposition to the motion to stay stated they recently discovered Kalibrr was void under 8 *Del. C.* § 510 for failure to pay franchise taxes.[12]  Kalibrr has not paid franchise taxes since 2020, and on June 15, 2022, just before Kalibrr and Rivera filed this action, the governor issued a proclamation declaring Kalibrr void.[13]

That was news to me.  On March 20, I requested affidavits disclosing when the parties found out Kalibrr was void, and supplemental briefing on how Kalibrr's void status might affect this action, including the Final Judgment.[14]  I asked the parties to address (i) whether a void corporation is considered dissolved and if so, if it enjoys a statutory wind up period;[15]  (ii) if being void affects the Court's ability to enter a Section 225 in rem judgment over board seats; and (iii) the Court's "jurisdiction, post-judgment and pending appeal, to consider the propriety

---

[11] D.I. 85 at Mot.

[12] D.I. 89 at Res. to Other Mot. ¶¶ 11, 26.

[13] D.I. 94, Exs. A, B; 8 *Del. C.* § 511.  As of July 17, 2024, Kalibrr's franchise taxes have still not been paid.  D.I. 98.

[14] D.I. 93.

[15] *See* 8 *Del. C.* § 278.

of judgments for, against, and regarding a corporation that turned out to have a void charter."[16]

Rivera on the one hand, and Angkor and Kwok on the other, submitted letter briefs on April 3, 2024; both sides posit Kalibrr is subject to a winding up period and so this litigation is not affected.[17] On April 30, the Delaware Supreme Court issued an order stating it "believe[d] that it would be in the interests of efficiency and justice for the Court of Chancery to address, in the first instance, whether Kalibrr's void status affects the Final Judgment."[18]

## II. ANALYSIS

I conclude a corporation voided under Section 510 is not considered dissolved and does not have a winding up period affording it time to close out affairs or litigate remaining claims. Without a winding up period, Kalibrr had no power to pursue or defend this litigation.

---

[16] D.I. 93 at 4–5.

[17] D.I. 94 at Letter; D.I. 95 at Letter. Defendants argued Kalibrr does not have standing "to request the relief Rivera is seeking because it doesn't appear to fall under § 278." D.I. 95 at Letter 6.

[18] D.I. 96. I read the Supreme Court's letter to ask me to answer how Kalibrr's void status may affect the Final Judgment before I address the pending motion to stay and maintain the status quo order.

### A. Kalibrr Has No Powers.

Kalibrr's certificate states it "is no longer in existence and good standing . . . having become inoperative and void . . . for non-payment of taxes."[19] Kalibrr became void by function of 8 *Del. C.* § 510, which provides:

> If any corporation, accepting the Constitution of this State and coming under Chapter 1 of this title, or any corporation which has heretofore filed or may hereafter file a certificate of incorporation under said chapter, neglects or refuses for 1 year to pay the State any franchise tax or taxes, which has or have been, or shall be assessed against it, or which it is required to pay under this chapter, or shall neglect or refuse to file a complete annual franchise tax report, *the charter of the corporation shall be void, and all powers conferred by law upon the corporation are declared inoperative* . . . .[20]

Kalibrr's corporate powers included the power to "[s]ue and be sued in all courts and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding, in its corporate name."[21] They also included the ability to "[w]ind up and dissolve itself in the manner provided in" the DGCL.[22]

---

[19] D.I. 94, Ex. A.

[20] 8 *Del. C.* § 510 (emphasis added). The legislature meant it: Section 513 "provides that whoever exercises any corporate powers of a corporation whose charter has been forfeited shall be guilty of a crime." *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713, 715 (Del. 1968); *see* 8 *Del. C.* § 513.

[21] 8 *Del. C.* § 122(2).

[22] *Id*. § 122(7).

Taking Kalibrr's certificate and Section 510 at their plain meaning, all Kalibrr's powers, including the powers to sue, be sued, dissolve, or wind up, have been "declared inoperative." This is a harsh consequence, and would deprive void corporations, and their creditors, of the benefits of the windup period 8 *Del. C.* § 278 affords dissolved corporations. Whether the legislature intended this distinction warrants a focused inquiry. I begin with the statutes, then consider the common law.

## B. Statutory Interpretation

"Where the intent of the legislature is clearly reflected by unambiguous language in the statute, the language itself controls."[23] "If uncertainty exists, however, rules of statutory construction are applied."[24] "'The legislative body is presumed to have inserted every provision for some useful purpose and construction.'"[25] "[W]ords in a statute should not be construed as surplusage if

---

[23] *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989) (citing *Evans v. State*, 516 A.2d 477, 478 (Del. 1986)).

[24] *Spielberg*, 558 A.2d at 293.

[25] *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982) (quoting *C & T Assocs. v. Gov't of New Castle*, 408 A.2d 27, 29 (Del. Ch. 1979)).

there is a reasonable construction which will give them meaning"[26] and

"[u]ndefined words in a statute must be given their ordinary, common meaning."[27]

I start my "analysis by deciding whether the statute[s] [are] ambiguous."[28]  I

find they are not.  As already discussed, Section 510 renders a corporation that

failed to pay franchise taxes void, and all its powers granted to it under the DGCL

inoperative,[29] including the power to dissolve, wind up, sue and be sued.[30]  While

corporations become void under Section 510, dissolution procedures are set forth

in Section 275, and neither references the other.[31]  Section 275 prescribes various

---

[26] *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994) (citing *In re Estate of Smith*, 467 A.2d 1274, 1280 (Del. Ch. 1983)); *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 344 (Del. 2012) ("[E]very word chosen by the legislature (and often bargained for by interested constituent groups) must have meaning.")).

[27] *Oceanport Indus.*, 636 A.2d at 900.

[28] *Rubick v. Sec. Instrument Corp.*, 766 A.2d 15, 18 (Del. 2000).

[29] 8 *Del. C.* § 510.  Black's Law dictionary defines "void" as something that is "[o]f no legal effect," and "inoperative" is defined as "[h]aving no force or effect" and being "not operative."  *Void*, Black's Law Dictionary (12th ed. 2024); *Inoperative*, Black's Law Dictionary (12th ed. 2024).

[30] 8 *Del. C.* § 122.

[31] Some states explicitly declare corporations "dissolved" for failure to pay taxes.  *See, e.g.*, N.Y. Tax Law § 203-a(1)-(4) (McKinney 2024) ("[C]orporations . . . [that] have not filed [tax] reports required under this article during the period of two consecutive years," after proclamation, "shall be deemed dissolved without further legal proceedings.").  Others include void corporations in their winding up statutes.  Kan. Stat. Ann. §§ 17-7510, -6807 (West 2024) (including corporations that fail to pay taxes in continuation of dissolved company statute); N.H. Rev. Stat. Ann. §§ 293-A:14.20-21 (2024).

means of dissolution, e.g, through a board resolution approved by a majority of stockholders,[32] through unanimous stockholder written consent,[33] and by limitation in its own charter:[34] being proclaimed void is not listed as a path to dissolution. Indeed, Section 277 provides that "[n]o corporation shall be dissolved . . . under this chapter until . . . [a]ll franchise taxes due to or assessable by the State . . . have been paid by the corporation."[35] The power to wind up is granted in Section 278, which states:

> All corporations, whether they expire by their own limitation[36] or are ***otherwise dissolved***, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business . . . . With respect to any action, suit or proceeding begun by or against the corporation either

---

[32] 8 *Del. C.* § 275(a)-(b).

[33] *Id*. § 275(c).

[34] *Id*. § 275(f).

[35] *Id.* § 277.

[36] This refers to corporations that have "limited life" provisions in their charters. *See* 8 *Del. C.* § 102(b)(5) ("A provision limiting the duration of the corporation's existence to a specified date; otherwise, the corporation shall have perpetual existence."); Jeffrey R. Wolters and James D. Honaker, *Analysis of the 2010 Amendments to the Delaware General Corporation Law*, 4–5 (2010), https://www.law.upenn.edu/live/files/6789-analysis-2010-amend-del-gen-corp-lawpdf ("Section 278 has been amended to clarify that such limited life corporations shall, upon their expiration, be treated as dissolved corporations subject to Section 278 and its automatic three year winding up period.").

> prior to or within 3 years after the date of its ***expiration or dissolution***, the action shall not abate by reason of the ***dissolution*** of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.[37]

By its plain language, Section 278 only applies to dissolved corporations.

The plain language of other statutes concerning dissolved and void corporations reflects the distinction between the two. "[W]hen different terms are used in various parts of a statute it is reasonable to assume that a distinction between the terms was intended."[38] "[W]here a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the Legislature was aware of the omission and intended it."[39] When it comes to resuscitating corporations, Section 311 addresses dissolved corporations, while Sections 312 and 313 address the void ones.[40] Section 279 covers trustees or

---

[37] 8 *Del. C.* § 278 (emphasis added).

[38] *Giuricich*, 449 A.2d at 238 (quoting *C & T Assocs.*, 408 A.2d at 29)).

[39] *Giuricich*, 449 A.2d at 238.

[40] 8 *Del. C.* § 311(a) ("At any time prior to the expiration of 3 years following the dissolution of a corporation pursuant to § 275 . . . a corporation may revoke the dissolution theretofore effected by it or restore its certificate of incorporation after it has expired by its own limitation."); *id.* § 312(d) ("Any corporation whose certificate of incorporation has become forfeited or void pursuant to this title may at any time procure a revival of its certificate of incorporation, together with all the rights, franchises,

receivers for dissolved corporations, while Section 509 addresses how the state can request receiverships for the void ones.[41] The General Assembly persistently used different words, and offered different mechanisms, for void corporations and dissolved corporations.[42] The language of Title 8 supports the conclusion that Section 278 is confined to dissolved corporations, to the exclusion of void ones.

Normally, my inquiry would end here.[43] But because the high court has requested I explore this question, I will briefly review the relevant legislative history, which confirms my findings. Dissolved corporations used to die a "civil

---

privileges and immunities . . . ."); *id.* § 313; *see also id.* 312(g) ("Any corporation that revives its certificate of incorporation under this chapter shall pay to this State a sum equal to all franchise taxes, penalties and interest thereon due at the time its certificate of incorporation became forfeited or void pursuant to this title . . . .").

[41] *Id.* § 279; *id.* § 509.

[42] While the statutory provisions concerning void and dissolved corporations are found in different chapters of Title 8, I give this no significance. "The classification and organization of the titles, parts, chapters . . . are made for the purpose of convenient reference and orderly arrangement, and no implication, inference or presumption of a legislative construction shall be drawn therefrom." 1 *Del. C.* § 305; *Salzberg v. Sciabacucchi*, 227 A.3d 102, 117 (Del. 2020) ("Each part or section of a statute should be construed in connection with every other part or section to produce a harmonious whole.").

[43] *Ingram v. Thorpe*, 747 A.2d 545, 547 (Del. 2000) ("Where the language of the statute is unambiguous, no interpretation is required and the plain meaning of the words controls." (citing *Spielberg*, 558 A.2d at 291)).

death" immediately upon dissolution.[44]  "At an early stage of our law, that law was clear, if harsh. . . . [N]ot only could the corporation not thereafter be sued, but pending suits against it abated."[45]  "Thus, statutory authority [wa]s necessary to prolong the life of a corporation past its date of dissolution."[46]  As early as 1853, the General Assembly did just that: it provided dissolved corporations a three-year windup period.[47]

But void corporations were not provided that same right.  "[I]n 1899, the General Assembly enacted the first General Corporation Law . . . ."[48]  At that time, Section 510's predecessor stated that "[i]f any corporation hereafter created shall for two consecutive years neglect or refuse to pay the State any tax . . . the charter of such corporation shall be void, and all powers conferred by law upon such corporation are hereby declared inoperative and void[.]"[49]  Under Section 122's

---

[44] *In re RegO Co.*, 623 A.2d 92, 95 (Del. Ch. 1992); *Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 792 (Del. Ch. 2007), *aff'd*, 956 A.2d 32 (Del. 2008) (explaining statutes like Section 278 "mitigated that harshness by continuing the legal existence of a dissolved corporation for a wind-up period during which claims can be asserted").

[45] *RegO*, 623 A.2d at 95.

[46] *In re Citadel Indus., Inc.*, 423 A.2d 500, 503 (Del. Ch. 1980).

[47] 17 Del. Laws ch. 147, § 34 (1853).

[48] *Klein v. Sunbeam Corp.*, 95 A.2d 460, 461 (Del. 1953).

[49] 22 Del. Laws ch. 15, § 10 (1899).

predecessor, those powers included the power to "sue and be sued" and "wind up and dissolve itself."[50] Section 275's and 278's predecessors made no reference to void corporations.[51]

Over six decades later, the "Delaware Corporation Law was extensively revised."[52] The *Review of the Delaware Corporation Law*, a report written by Professor Ernest Folk to assist the legislature in its revisions,[53] explained that "[u]nder Delaware law, a corporation's life may terminate or suspend for various reasons and under varying titles."[54] Those included dissolution, which "results from voluntary action of directors and shareholders," as well as revocation and

---

[50] 22 Del. Laws ch. 166, § 2 (1901).

[51] *Id*. § 39; *id*. § 40 ("All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall, nevertheless be continued for the term of three years . . . for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business . . . .").

[52] *Giuricich*, 449 A.2d at 237.

[53] "The Folk Report is a contemporaneous analysis of proposed amendments to the Delaware indemnification statute and is helpful legislative history." *MCI Telecomms. Corp. v. Wanzer*, 1990 WL 91100, at *10 (Del. Super. Ct. June 19, 1990); *see also Zohar II 2005-1, Ltd. v. FSAR Hldgs., Inc.*, 2017 WL 5956877, at *24 n.234 (Del. Ch. Nov. 30, 2017) ("Professor Folk's recommendations were fundamental in constructing the final version of the 1967 revisions . . . .").

[54] Ernest L. Folk, III, *Review of the Delaware Corporation Law*, at 211, https://delawarelaw.widener.edu/files/resources/folkreport.pdf [hereinafter "Folk Report"].

"'becoming[ing] inoperative' for non-payment of taxes."[55]  Folk noted that "more recent statutes have, as a rule, overhauled these procedures rather thoroughly, treating all of them as varieties of 'dissolution' to be followed by 'liquidation' under uniform procedures."[56]  But Folk recommended against "undertak[ing] a thorough revision of its dissolution procedures."[57]  Indeed, the procedures surrounding dissolution and voidness did not significantly change at that time.[58]  The first edition of Folk on the Delaware General Corporation Law, written in

---

[55] Folk Report at 211–12.  Folk listed charters that "'expire' because of a fixed life" as another way for a corporation's life to terminate.  *Id*. at 212.  In 2022, Section 275 was revised to "ma[k]e clear that the termination of a corporation's existence in this way constitutes 'dissolution' for statutory purposes."  John J. Paschetto, Lauren M. McCrery, et. al, *Delaware Corporations May Not Exculpate Officers, Appraisal Demands No Longer Must Be Made Only by Registered Stockholders, and Boards May Delegate Authority to Issue Shares and Options, Among Other Recent Changes to the DGCL*, 5 (2022), https://www.law.upenn.edu/live/files/12312-young-conaway-amendments-effective-august-1-2022; 88 Del. Laws ch. 377, § 275 (2022).  No such amendment for voidness has been made.

[56] Folk Report at 212.

[57] *Id.* ("This Report, does not recommend that Delaware undertake a thorough revision of its dissolution procedures, but makes various suggestions for improving procedure within the existing framework thereby preserving relevant case-law.").

[58] *Minutes of the Twenty-Second Meeting of Delaware Corporation Law Study Committee* (1965); *Minutes of the Twenty-Seventh Meeting of Delaware Corporation Law Study Committee* (1966).

1972, stated that a corporation "whose charter has been proclaimed void 'cannot properly be considered dissolved and within the purview of section 278.'"[59]

While additional changes to the DGCL's dissolution statutes have occurred over the last five decades,[60] Title 8 has continued to make separate provision for void and dissolved corporations. The plain language of Title 8 supports the conclusion that Section 278's provision of a winding up period for dissolved corporations does not extend to void corporations.

### C. Split In Caselaw

Despite Title 8's plain language, whether Section 278 applies to void corporations has been described as an open question.[61] Indeed, precedent is split on whether void corporations are tantamount to being dissolved and therefore subject to a winding up period.[62] My letter to the parties and their responses

---

[59] 3 Robert S. Saunders et al*., Folk on the Delaware General Corporation Law*, § 278.07 at 10-111 to -112 (7th ed. 2022) [hereinafter "Folk"].

[60] Section 275 has been amended at least seven times since 1967. Folk, § 275.07 at 10-85 to -86. Section 278 has been amended at least twice since 1967. *Id*. § 278.08 at 10-112.

[61] 1 R. Franklin Balotti, et al., *The Delaware Law of Corporations & Business Organizations* § 10.16, at 10-49 to -50 (4th ed. 2024).

[62] *V.E.C. Corp. of Del. v. Hilliard*, 2011 WL 7101236, at *6 (S.D.N.Y. Dec. 13, 2011) ("Courts interpreting Delaware law disagree as to whether a Delaware corporation whose charter has been forfeited or declared void for failure to pay its franchise taxes is dissolved.") (citing cases).

addressed this question and the split response, so I take the Supreme Court's letter to ask me to address both.

In *Transpolymer Industries, Inc. v. Chapel Main Corp.*, the Delaware Supreme Court *sua sponte* dismissed an appeal because the appellant corporation suffered two flaws: (1) it was purportedly, and improperly, represented by a pro se person, and (2) it had been proclaimed void the year before, and therefore had "ceased to exist and . . . lost any standing to appeal and be heard, even if represented by counsel."[63] The high court's opinion did not mention any winding up period.

Many federal courts interpreting Delaware law have held that void corporations are not dissolved.[64] In *Indian Protective Ass'n v. Gordon*, the Court

---

[63] *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936, 1990 WL 168276, *1 (Del. 1990) (TABLE). In *First State Staffing Plus, Inc.*, the Court of Chancery found *Transpolymer*'s "brief reference" to the corporation's voidness following its lack of representation "could be considered dicta" and that the case did not require a departure from the traditional rule that 'a dissolved Delaware corporation has the power to close its affairs but not to carry on the business for which it was established.'" *First State Staffing Plus, Inc. v. Montgomery Mut. Ins. Co.*, 2005 WL 2173993, at *7 (Del. Ch. Sept. 6, 2005) (citing *Gamble v. Penn Valley Crude Oil Corp.*, 104 A.2d 257, 260 (Del. 1954)). The authority cited for support in *First State* is *Gamble*, which involved a voluntarily dissolved corporation. 104 A.2d 257, 260 (Del. 1954). I read the two grounds for dismissal in *Transpolymer* to stand on equal footing, and as explained, view the statutes governing dissolved companies as inapplicable to void companies.

[64] *See, e.g.*, *In re Apple iPod iTunes Antitrust Litig.*, 2014 WL 6783763, at *4 (N.D. Cal. Nov. 25, 2014) ("While authority is split on whether voided corporations fall under

of Appeals of the District of Columbia held, under Delaware law, that a void

corporation "was not entitled to maintain [the] suit" because "[i]t had not been

dissolved in any of the ways provided" by Delaware law.[65]  The Court of Appeals

determined that "[b]y the proclamation of the governor, under the express

provision of the franchise tax act, its incorporation became inoperative and void"

not dissolved, and "that is to say, as if it had never existed."[66]  *Indian Protective*

was affirmed by the United States Supreme Court.[67]

At the same time, many Delaware cases have held that "a corporation whose

charter is void and powers inoperative, under [Section 510's predecessor], is

dissolved within the meaning of" Section 279's predecessor.[68]  But upon

---

section 278, the Court finds more persuasive the approach followed by the Delaware
Supreme Court—that void corporations lose their standing to pursue legal actions until
the corporate status is restored."); *Bd. of Managers of Soho Int'l Arts Condo. v. City of
New York*, 2005 WL 1153752, at *11 n.19 (S.D.N.Y. May 13, 2005) ("Nowhere in
Delaware's General Corporation Law, or its Corporation Franchise Tax Law, is a
corporation whose charter has been forfeited for non-payment of taxes, referred to as
dissolved.  It is consistently referred to as void." (citing 8 *Del. C.* §§ 312–13, 510)); *U.S.
v. Ne. Pharm. & Chem. Co..*, 810 F.2d 726, 746 (8th Cir. 1986) ("[F]orfeiture of the
corporate charter and voluntary dissolution are not legally equivalent.").

[65] *Indian Protective Ass'n v. Gordon*, 34 App. D.C. 553, 557 (D.C. Cir. 1910), *aff'd,* 218
U.S. 667 (1910), *and aff'd*, 225 U.S. 698 (1912).

[66] *Id*.

[67] *Indian Protective Ass'n v. Gordon*, 218 U.S. 667 (1910).

[68] *Wuerfel v. F.H. Smith Co.*, 13 A.2d 601, 602 (Del. 1940); *see also IMO Est. of
Nastatos*, 2023 WL 8269833, at *9 (Del. Ch. Nov. 30, 2023) ("Because the Company's

inspection, these cases are built on a shaky foundation. Key early cases begin with the faulty assumption that the governor's proclamation of voidness worked a dissolution. In 1911 and 1912, in *Harned v. Beacon Hill Real Estate*, this Court and the Delaware Supreme Court considered the charter of a corporation that was void for failure to pay taxes as "repealed and the corporation *dissolved by proclamation of the Governor* according to the act of assembly in that behalf."[69] In 1952, *Addy v. Short* noted there was no difference "between the status of a corporation that has been *dissolved by proclamation of the Governor* for nonpayment of tax and a corporation that has been dissolved by voluntary act of its

---

charter was properly marked void, it was, as of 1993, a dissolved corporation (citing *Wuerfel*, 13 A.2d at 602)); *James v. United Med. LLC*, 2017 WL 1224513, at *4 (Del. Super. Ct. Mar. 31, 2017) (dismissing claim involving long-voided entity because the three year "statutory period allowing [plaintiff] to bring a suit has expired, and there is no allegation that [plaintiff] received an extension of that period."); *Darley Liquor Mart, Inc. v. Bechtel*, 1982 WL 593130, at *1 (Del. Super. Ct. Mar. 19, 1982) (finding void corporation had standing because "278 provides that the capacity of a dissolved corporation to sue continues for at least three years from expiration or dissolution. It follows that plaintiff corporation had the capacity to sue when it filed this action, notwithstanding that its charter had previously been repealed for non-payment of the corporate franchise tax.").

[69] *Harned v. Beacon Hill Real Est. Co.* (*Harned II*), 84 A. 229, 230, 233 (Del. 1912) (emphasis added); *Harned v. Beacon Hill Real Est. Co.* (*Harned I*), 80 A. 805, 807–08 (Del. Ch. 1911), *aff'd* 84 A. 229 (Del. 1912) (describing "[a] corporation which has defaulted in payment of its franchise tax and been proclaimed" as a "corporation dissolved by proclamation.").

stockholders."[70]  Building on the assumption that gubernatorial proclamations had worked a dissolution, the *Harned* and *Addy* courts concluded the statutory provision for receiverships of corporations "dissolve[d] in any manner"[71] included dissolutions by proclamation.[72]

Neither the *Harned* cases nor *Addy* kicked the tires on the assumption that a proclamation based on nonpayment of taxes worked a dissolution.  But then, as now, the statutes distinguished voidness and dissolution, as explained above.  I believe that foundational assumption that a proclamation of voidness worked a dissolution is unsupported, based on the statutes' plain language.

In another midcentury case, *Wax v. Riverview Cemetery Co.*, the Superior Court considered the marketability of title of a property previously owned by a

---

[70] 89 A.2d 136, 140 (Del. 1952) (emphasis added).  The assumption that void corporations are dissolved underpins modern decisions as well.  *E.g.*, *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1195 (Del. 1993) ("In tandem, [Section 278 and Section 279] insure that whether a corporation is dissolved voluntarily by its shareholders or for nonpayment of taxes, it remains a viable entity authorized to possess property as well as sue and be sued incident to the winding up of its affairs." (citing *Addy*, 89 A.2d at 140)).

[71] The operative version of Section 279 at the time read that "[w]hen any corporation organized under this Act shall be dissolved in any manner whatever, the Court of Chancery . . . may either continue such directors, trustees as aforesaid, or appoint one or more persons to be receivers of and for such corporation. . . ."  22 Del. Laws ch. 166, § 43 (1901).

[72] *Addy*, 89 A.2d at 140; *Harned I*, 80 A. at 808; *Harned II*, 84 A. at 233.

void corporation, and whether the void corporation was a proper defendant in the related foreclosure proceedings.[73] The Court considered *Indian Protective* but determined *Harned* and its progeny "substantially destroy[ed] the construction of" that case.[74] The Court reasoned the "Franchise Tax Act is purely a revenue measure," and, relying on authority from other jurisdictions, held that because void corporations could be statutorily revived, a void corporation was merely "in a state of coma from which it can be easily resuscitated."[75] The Court noted it was "[k]eeping in mind that [it was] dealing with a creditor having no interest in the corporation, except as a creditor holding its bond and mortgage" and could not "conclude that the legislature intended to penalize the creditor and destroy its rights."[76] *Wax*'s holding was built on precarious authority. And four decades

---

[73] 24 A.2d 431, 427, 437 (Del. Super. Ct. 1942).

[74] *Id.* at 434.

[75] *Id.* at 434–36 ("The great weight of modern decisions construing tax Acts similar to our own hold that so long as there is a statutory right to be reinstated, the proclamation of forfeiture for non-payment of taxes does no more than forfeit the corporate right to do business, but does not extinguish the corporation as a legal entity.").

[76] *Id*. at 436. Many cases following *Harned*, *Addy*, and *Wax* rely on these holdings in treating void corporations as dissolved. *See, e.g.*, *City Investing Co.*, 624 A.2d at 1195 ("In tandem, [prior 278 and 279] insure that whether a corporation is dissolved voluntarily by its shareholders or for nonpayment of taxes, it remains a viable entity authorized to possess property as well as sue and be sued incident to the winding up of its affairs." (citing *Addy,* 89 A.2d at 140)); *Gorson,* 243 A.2d at 715 ("And in Delaware it has long been the law that a Delaware corporation is not dead for all purposes following

later, in *Transpolymer*, the Delaware Supreme Court gave *Wax* no mind in dismissing an appeal because a corporation was void.[77]

I conclude the supported law is best, and dispositively, stated in *Transpolymer*: a corporation that is void for nonpayment of franchise taxes has no standing to sue or to bring an appeal.[78]

### D. Kalibrr Has No Standing, Yet Final Judgment Cannot Be Set Aside *Sua Sponte*.

In my view, Title 8 and *Transpolymer* are clear: void corporations are not dissolved, and are not subject to Section 278's winding up period. No other source of any winding up period for a void corporation has been identified. A void corporation has no power to sue, be sued, or wind up.[79] Kalibrr died a civil death before it purported to file this action.

---

forfeiture of its charter." (citing *Wax*, 24 A.2d 431; *Addy*, 89 A.2d 136; *Harned II*, 84 A. 229)); *Pagliara v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 2352150, at *3 (Del. Ch. May 31, 2017) ("Delaware and federal courts have exercised personal jurisdiction over defendant Delaware corporations that have not filed a certificate of dissolution but whose certificates of incorporation were voided for failure to pay franchise taxes." (citing *Wax*, 24 A.2d at 436; *Ross v. Venezuelan-Am. Indep. Oil Producers Ass'n*, 230 F. Supp. 701, 704 (D. Del. 1964); *Sanders v. Vari*, 143 A.2d 275, 277 (Del. Ch. 1958))); *Townsend v. Delaware Glue Co.*, 103 A. 576, 577 (Del. Ch. 1918) (citing *Harned II*, 84 A. 229).

[77] *Transpolymer*, 1990 WL 168276, at *1.

[78] *Id*.

[79] While being shut off from the courts is a harsh outcome, the legislature treats limited liability companies in a similar manner if they fail to pay taxes. Those entities cannot

Now the rubber hits the road. Kalibrr died before this action began, yet it purported to litigate a case to the Final Judgment, which grants it damages and enforces director inspection rights. But officers and directors of long-dissolved companies "have no power to act because the corporation no longer has legal existence."[80] The same is true for void corporations.[81] Nobody was authorized to cause Kalibrr to bring or defend litigation. It also seems unlikely the Court could enter judgment in Kalibrr's favor: indeed, the Final Judgment is likely void.[82]

---

"maintain any action, suit or proceeding" in the state until taxes have been paid and the LLC is restored to good standing. 6 *Del. C.* § 18–1107(l); *HWI P'rs, LLC v. Choate, Hall & Stewart LLP*, 2013 WL 6493118, at *3 (D. Del. Dec. 11, 2013) (recommending dismissal of claim where "[a]t the time of removal, HWI Technologies was not a LLC in good standing with the State of Delaware, and lacked the capacity to sue under Delaware law . . . for failure to pay annual franchise taxes." (citation omitted)).

[80] *Citadel*, 423 A.2d at 504.

[81] 8 *Del. C.* §§ 510, 513 ("Whoever exercises or attempts to exercise any powers under the certificate of incorporation of any corporation which has been proclaimed by the Governor, after the issuance of the proclamation, shall be fined not more than $1,000 or imprisoned not more than 1 year, or both."). Likewise, Section 508 allows the Attorney General to file an injunction with the Court to stop a void corporation "from the exercise of any franchise or the transaction of any business within the State." *Id*. § 508. Section 509 provides a method for the Attorney General to appoint a receiver for a void corporation. *Id.* § 509.

[82] *See, e.g.*, *State, ex rel. Price's Ex'x v. Alexander,* 49 A.2d 420, 425 (Del. Super. Ct. 1946) (noting "well recognized authorities to the effect that a judgment entered in favor of a deceased person is void."); *In re Proton-Pump Inhibitor Prod. Liab. Litig.*, 2022 WL 17850260, at *2 (D.N.J. Dec. 22, 2022) ("'[A] party must have a legal existence as a prerequisite to having the capacity to sue or be sue' and a 'person who dies prior to filing suit is not a legal entity . . . .'" (quoting *Adelsberger v. U.S.*, 58 Fed. Cl. 616, 618 (Fed. Cl. 2003))); *In re Asbestos Prod. Liab. Litig. (No. VI)*, 311 F.R.D. 152, 156 (E.D. Pa.

But I do not believe I can do anything about that now absent a motion. I am unaware of any applicable mechanisms by which the Court of Chancery can set aside the Final Judgment *sua sponte*. Even subject matter jurisdiction, an issue "so crucial" the Court has a duty to raise it *sua sponte*, can only be raised at "any time before final judgment."[83] Court of Chancery Rule 60 identifies only two grounds for the Court itself to set aside a final judgment: clerical error or "fraud upon the Court."[84] I do not believe either is present here.

---

2015) ("The Court finds that since the deceased Plaintiffs had no legal existence when their complaints were filed, their suits are nullities with no legal effect."); *Darmanchev v. Roytshteyn*, 234 F.R.D. 78, 79 (E.D. Pa. 2005) ("In Pennsylvania, it is well-settled that '[a] dead man cannot be a party to an action, and any such attempted proceeding is completely void and of no effect. Moreover, because a dead person cannot be a party to an action commenced after his death, substitution of a personal representative of the dead person's estate is improper.'" (quoting *Montanya v. McGonegal*, 757 A.2d 947, 950 (Pa. Super. Ct. 2000))); *Banakus v. United Aircraft Corp.*, 290 F. Supp. 259, 260 (S.D.N.Y. 1968) ("Since Holochuck was dead when the action for personal injuries was commenced, that action must be treated as a nullity and it cannot be given life by substituting parties and amending the complaint. An action cannot be brought by a deceased. The action [was] void at its inception . . . ." (citations omitted)); *see also Citadel*, 423 A.2d at 504 (vacating order granting continuation of winding up period after the Court was informed company was long dissolved because "[a]fter that date, Citadel no longer existed as a body corporate. It no longer had legal existence as a corporation . . . at that point there was no longer a legal entity which could be continued through its officers, directors and shareholders.").

[83] *In re Coinmint, LLC*, 261 A.3d 867, 904 (Del. Ch. 2021) (internal quotation marks omitted) (quoting *Envo, Inc. v. Walters*, 2009 WL 5173807, at *4 n.10 (Del. Ch. Dec. 30, 2009)), *aff'd,* 2013 WL 1283533 (Del. Mar. 28, 2013) (TABLE)); Ct. Ch. R. 12(h).

[84] Ct. Ch. R. 60.

Fraud upon the Court is a "serious[] species, generally limited to fraudulent conduct that seriously 'affects the integrity of the normal process of adjudication.'"[85] "Clear examples of fraud on the court include bribery of a judge, jury tampering, or hiring an attorney for the sole purpose of improperly influencing the court."[86] No such fraud has occurred here. Both Rivera and Kwok affirmed they did not learn Kalibrr was void until after the Final Judgment.[87] Kwok learned Kalibrr was void in February after trying to obtain an apostille of the Final Judgment from the Delaware Secretary of State.[88] Rivera became aware in March, after reviewing Defendants' opposition to the motion to stay.[89] And to my knowledge, the Court has not made a clerical error. All of Rule 60's other reasons to set aside a judgment are left to the parties to assert by motion.[90] In particular, Rule 60(b)(4) allows this Court to vacate a void judgment upon motion.[91]

---

[85] *Johnson v. Preferred Pro. Ins. Co.*, 91 A.3d 994, 1005 (Del. Super. Ct. 2014).

[86] *Id.*

[87] D.I. 94, Ex. B. at 1–2; D.I. 95, Aff. ¶¶ 6–7.

[88] D.I. 95, Aff. ¶¶ 6–7.

[89] D.I. 94, Ex. B. at 1–2.

[90] Ct. Ch. R. 60. I intend no implication either way on whether a Rule 60 motion would be successful. I also note that Kalibrr may be revived, which would retroactively validate all actions that occurred since it became void. *See* 8 *Del. C.* § 312. Section 312(e) provides that "[u]pon the filing of the certificate in accordance with § 103 of this title the

The Final Judgment troubles me. But I am unaware of any rule, procedure, or equitable power that allows me, *sua sponte*, to set it aside. I believe all I can do without a motion is recognize that because and as long as Kalibrr is void, it cannot legally act to implement the Final Judgment without its agents committing a crime, and I have no expectation that they do so.[92]

I wrote this letter in response to the Delaware Supreme Court's request. I will give the high court and the parties at least twenty days to respond before I rule on the motions pending before me. I ask the parties to file this letter on the Delaware Supreme Court's docket.

---

corporation shall be revived with the same force and effect as if its certificate of incorporation had not been forfeited or void pursuant to this title." *Id.*

[91] Ct. Ch. R. 60(b)(4); *Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 112–13 (Del. Ch. 2017) ("Under Rule 60(b)(4), the court may vacate a judgment if 'the judgment is void.' A judgment is void if the court . . . lacked subject matter jurisdiction or could not exercise personal jurisdiction over the defendant."); *see also Citadel*, 423 A.2d at 507 (granting motion to vacate order that granted extension of winding up period after learning company was long dissolved and thus the Court was only empowered to appoint a receiver).

[92] 8 *Del. C.* § 513; *see, e.g.*, *Della Corp. v. Diamond*, 210 A.2d 847, 849 (Del. 1965) ("[I]t is against the public policy of this State to permit its courts to enforce an illegal contract prohibited by law."); *Lighthouse Behav. Health Sols., LLC v. Milestone Addiction Counseling, LLC*, 2023 WL 3486671, at *10 (Del. Ch. May 17, 2023) ("Delaware courts have refused to 'use the power entrusted it by the people of Delaware to compel specific performance of an aspect of an illegal contract.'" (quoting *Lynch v. Gonzalez*, 2020 WL 4381604, at *44 (Del. Ch. July 31, 2020)).

## III.  CONCLUSION

Kalibrr is a void corporation, not a dissolved corporation.  All powers granted upon it by the DGCL, including the power to sue and be sued, are inoperative.  Kalibrr has no winding up period.  It is dead, and has been since before it purported to initiate this action.  But I see no way this Court could set aside the Final Judgment on its own.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:    All Counsel of Record, via *File & ServeXpress*